## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

**DEION LEWIS**                                    **CIVIL ACTION NO. 5:16-cv-1384**
      **LA. DOC #372552**
                                                  **SECTION P**

**VS.**

                                            **JUDGE S. MAURICE HICKS**

**DARRELL VANNOY**                           **MAGISTRATE JUDGE HAYES**

### REPORT AND RECOMMENDATION

*Pro se* Petitioner Deion Lewis, an inmate in the custody of the Louisiana State Penitentiary in Angola, Louisiana, filed the instant Petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on October 3, 2016. [doc. # 1]. Petitioner attacks his April 23, 2012, conviction of second degree murder, and his sentence of life imprisonment without the benefit of probation, parole, or suspension of sentence imposed thereon by Louisiana's First Judicial District Court, Caddo Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

### Background

The underlying facts in this case have been set forth by the Louisiana Second Circuit Court of Appeal as follows:

> On August 26, 2009, Defendant and two other men entered the home of Antonia Wesley ("Wesley") in Shreveport, Louisiana. Defendant and one other of the intruders were armed; they immediately began searching the house and demanding money from Wesley. [Kevin Earl] Edwards was sleeping in one of the bedrooms of the Wesley home when he was awakened by the intruders and fatally shot twice in the torso. Though Defendant and the other intruders rifled through drawers and repeatedly asked Wesley where the money was, there is no conclusive evidence that anything was missing from the house after the incident.

1

Shortly after Edwards' death, SPD was investigating the death of Shannon Golston, a very close friend of Defendant. Investigators found a .45 caliber firearm in Golston's residence that matched the rifling characteristics of the casings found at the scene of Edwards' murder.

A few weeks after the home-invasion, Wesley received a phone call from Waco Collins, a known criminal in the Shreveport area, who offered her information about who was involved in the home invasion/robbery that led to Edwards' death. Mr. Collins provided Wesley with three names that he knew to be the men who were in her house on August 26, 2009—Shannon Golston, Gerald Needham and Defendant. Wesley passed this information on to the SPD detectives investigating the crime. Both Wesley and her older son, D'Schwadraa, identified Defendant as the shooter in the photographic lineup that was administered by the SPD.

On June 17, 2010, Defendant was arrested and charged by bill of information for the first-degree murder of Edwards.

The bill of information was later amended to the charge of second degree murder. During trial, defense counsel filed a motion to suppress identification testimony alleging that the photographic lineup used to identify Defendant as the suspect was unnecessarily suggestive. At the suppression hearing, the trial court denied the motion.

On April 23, 2012, the jury found Defendant guilty of second degree murder. Defense counsel filed a motion for post-verdict judgment of acquittal, arguing that the evidence presented by the State failed to prove beyond a reasonable doubt that Defendant committed the murder of Edwards. That motion was denied. Defense counsel also filed a motion for new trial, arguing that prejudicial hearsay testimony was admitted into trial. That motion was also denied. That same day, Defendant waived the sentencing delays and the sentencing hearing was held. After reviewing Defendant's criminal history, which included four felony convictions and four other felony arrests, the trial court sentenced Defendant to life imprisonment without the benefit of probation, parole or suspension of sentence.

*State v. Lewis*, 110 So.3d 644, 648-49 (La. Ct. App. 2d Cir. 2013).

On appeal to the Circuit Court, Lewis raised six claims for relief: (1) insufficient evidence; (2) the trial court erred in denying the motion to suppress identification testimony; (3) the trial court erred in denying defendant's motion for a new trial; (4) the trial court violated Lewis' confrontation rights when it admitted hearsay testimony; (5) the trial court erred in

2

denying defendant's motion to reconsider sentence and rendering an excessive sentence; and (6) the trial court erred when it allowed DNA evidence to be admitted without determining that it met the appropriate standard of scientific reliability. [doc. #12-8, p. 258; pp. 313-314]. The appellate court denied all claims on the merits. *Lewis*, 110 So.3d 644.

On appeal to the Louisiana Supreme Court, Lewis argued the same six claims. [doc. #12-9, p. 30]. The Louisiana Supreme Court denied writs on October 25, 2013. *Id.* at 147.

On December 23, 2014, Lewis filed an application for post-conviction relief with the state trial court asserting six claims for relief: (1) actual innocence/insufficient evidence; (2) his constitutional rights were violated when the court allowed the State's DNA expert to testify even though "she never completed a certification program"; (3) his DNA was illegally taken in violation of the Fourth Amendment; (4) his arrest was made without probable cause in violation of the Fourth Amendment; (5) he was deprived of his right to be informed of the nature of the charges against him in violation of the Sixth Amendment; and (6) ineffective assistance of counsel for trial counsel's failure to object to the testimony of an uncertified expert witness, failure to request separate DNA testing, failure to challenge an illegal search and seizure, and failure to investigate alibi witnesses. *Id.* at pp. 151-198.

On April 9, 2015, the trial court denied Lewis' state habeas petition, reasoning that claims one through five had already been addressed and dismissed on appeal. *Id.* at 226. As for Lewis' ineffective assistance of trial counsel claims, the trial court held that Lewis failed to meet his burden of proof under Louisiana Code of Criminal Procedure article 930.2 and *Strickland v. Washington*. *Id.* at 227.

Raising the same six claims, Lewis filed an application for supervisory writs with the

Second Circuit Court of Appeal. *Id.* at 232-234. On June 26, 2015, the appellate court denied writ "[u]pon the showing made," citing to article 930.2. *Id.* at 267.

Lewis raised the same six claims in an application for supervisory writs with the Louisiana Supreme Court. *Id.* at 271-273. On September 6, 2016, the Louisiana Supreme Court denied the writ application, reasoning that Lewis failed to show he received ineffective assistance of trial counsel under *Strickland*, and that the other claims were either "repetitive and/or unsupported" under articles 930.2 and 930.4. *Id.* at 305.

On October 3, 2016, Lewis filed the instant federal habeas petition asserting twelve grounds for relief: (1) actual innocence/insufficient evidence; (2) his fifth, sixth, and fourteenth amendment rights were violated when the court allowed the State's DNA expert to testify even though "she never completed a certification program"; (3) his DNA was illegally taken in violation of the Fourth Amendment; (4) his arrest was made without probable cause in violation of the Fourth Amendment; (5) he was deprived of his right to be informed of the nature of the charges against him in violation of the Sixth Amendment; (6) ineffective assistance of counsel for failing to object to the testimony of an uncertified expert witness, failing to request separate DNA testing, failing to challenge the illegal search and seizure of Lewis' DNA, and failing to investigate alibi witnesses; (7) insufficient evidence; (8) the trial court erred in denying the motion to suppress identification testimony; (9) the trial court erred in denying defendant's motion for a new trial; (10) the trial court violated Lewis' confrontation rights when it admitted hearsay testimony; (11) the trial court erred when it allowed DNA evidence to be admitted without determining that it met the appropriate standard of scientific reliability; and (12) excessive sentence. [doc. #1].

This matter is before the court.

## I.      Standard of Review – 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief. The AEDPA limits how a federal court may consider *habeas* claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal

courts presume such determinations to be correct; however, a petitioner can rebut this

presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). AEDPA has put into

place a deferential standard of review, and a federal court must defer to a state court adjudication

on the merits. *Valdez v. Cockrell*, 274 F.3d 941, 950 (5th Cir. 2001). "As a condition for

obtaining habeas corpus from a federal court, a state prisoner must show that the state court's

ruling on the claim being presented in federal court was so lacking in justification that there was

an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

## II.    Exhaustion of State Court Remedies: Claims Nine and Twelve

Respondent contends that the Court cannot consider claims nine and twelve because they

are both unexhausted and procedurally defaulted. [doc. # 14-1, pp. 6-8].

 "An application for a writ of habeas corpus on behalf of a person in custody pursuant to

the judgment of a State court shall not be granted unless it appears that the applicant has

exhausted the remedies available in the courts of the State . . . ."  28 U.S.C. § 2254(b)(1)(A). The

Fifth Circuit explained exhaustion as follows:

> The exhaustion requirement is satisfied when the substance of the federal claim is
> fairly presented to the highest state court on direct appeal or in state post-conviction
> proceedings, even if the state court fails to address the federal claim, or, if the federal
> claim is not fairly presented but the state court addresses it *sua sponte*. A claim is
> fairly presented when the petitioner asserts the claim in terms so particular as to call
> to mind a specific right protected by the Constitution or alleges a pattern of facts that
> is well within the mainstream of constitutional litigation.[1]  It is not enough that all
> the facts necessary to support the federal claim were before the state courts or that
> a somewhat similar state-law claim was made. Rather, the petitioner must afford the
> state court a fair opportunity to apply controlling legal principles to the facts bearing

---

[1] A petitioner does not "fairly present" a claim to a state court if that court must read
either a brief before a lower court or a lower court's opinion to locate the claim.  *Baldwin v.
Reese*, 541 U.S. 27, 32 (2004).

upon his constitutional claim.

*Johnson v. Cain*, 712 F.3d 227, 231 (5th Cir. 2013) (internal quotations marks and citations omitted). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Id.* Likewise, to have "fairly presented" a federal claim, a petitioner must have reasonably alerted the state courts to the federal nature of his claim. *Baldwin*, 541 U.S. at 29-32 (holding a petitioner failed to "fairly present" a claim of ineffective assistance by his state appellate counsel merely by labeling the performance of said counsel "ineffective," without accompanying that label with either a reference to federal law or a citation to an opinion applying federal law to such a claim).

Here, it is clear from a review of the state court record that Petitioner has not exhausted claims nine and twelve. Claim nine asserts that "the Second Circuit Court of Appeal and the District Court erred, as a matter of law, in denying petitioner's motion for new trial." In a conclusory fashion, Lewis argues that his due process rights were violated. [doc. #1-1, p. 50]. Petitioner failed to "fairly present" the Louisiana Supreme Court with the same federal due process argument that he presents to this Court. Claim twelve asserts that the mandatory minimum sentence imposed on Lewis was unconstitutionally excessive. Before the state courts, claims nine and twelve were accompanied by purely state-law arguments. [doc. #12-9, pp. 43-

45]; *See Smith v. LeBlanc*, No. 05-2847, 2007 WL 1030235, *10 (E.D. La. 2007) ("To the extent petitioner is arguing that his sentence is excessive under Louisiana law, that claim is not cognizable in this federal [habeas] proceeding."). Therefore, Petitioner did not "fairly present" claims nine and twelve to the state courts, and such claims are unexhausted.

Although, if Petitioner were to assert these unexhausted claims before the state courts in a second application for post-conviction relief, the state courts would reject Petitioner's application as procedurally barred in reliance on LA. CODE CRIM. P. art. 930.4(E), which states that a "successive application shall be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application," or in reliance on article 930.4(D), which states that a "successive application shall be dismissed if it fails to raise a new or different claim." Thus, Petitioner's claims are procedurally defaulted and the Court, by extension, is barred from undertaking review. *See Bledsue v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999) ("Procedural default exists where . . . the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred."); *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995).[2]

_____

[2] It is well settled that a mixed *habeas* petition should usually be dismissed without prejudice so that the petitioner may either return to the state courts to exhaust his claims or amend his federal petition and resubmit it, raising only the exhausted claims. *Alexander v. Johnson*, 163 F.3d 906, 908 (5th Cir. 1998). Here, however, while Petitioner's claims are not exhausted in the traditional sense, they are "technically exhausted" because no state remedies remain available. *Coleman v. Thompson*, 501 U.S. 722, 731-33 (1991) (holding that a "habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion" because there are no state remedies available to him). In this scenario, "there is no substantial difference between nonexhaustion and procedural default." *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998). In that respect, the Fifth Circuit has held that when a petition presents both exhausted claims and unexhausted claims that are procedurally barred, the petition should not be dismissed as a mixed petition because there is nothing for the petitioner to exhaust. *Bagneris v. Cain*, 254 F. App'x 351, 352 (5th Cir. 2007); *see also Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) (cited with approval in *Sones*, 61 F.3d at 416) ("[I]f it is obvious that the

A petitioner may be excepted from the procedural default rule if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim(s) will result in a "fundamental miscarriage of justice." *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997). To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that the petitioner failed to recognize the factual or legal basis for a claim, or failed to raise the claim or objection despite recognizing it, does not constitute cause for a procedural default. *Id.* at 486.

Here, Petitioner has not offered any cause for his failure to fairly present these two claims before the state courts, nor does this Court's review of the record reveal any factor external to the defense that prevented Petitioner from properly raising the claims. "The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997).

Claims nine and twelve are thus procedurally barred from review absent a showing that a fundamental miscarriage of justice will occur if the merits of the claims are not reviewed. *Id.* at 497. To establish a fundamental miscarriage of justice, Petitioner must provide this Court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986). To satisfy this standard, Petitioner must show that "but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense." *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997). Petitioner makes no

---

unexhausted claim would be procedurally barred in state court, we will forego the needless 'judicial ping-pong' and hold the claim procedurally barred from habeas review")).

argument that a fundamental miscarriage of justice will occur if his claims are not reviewed by this Court.  Accordingly, Petitioner has failed to overcome the procedural bar to the claims at issue. Claims nine and twelve should be **DISMISSED WITH PREJUDICE**.

### III.    Petitioner's Remaining Claims

Claims 1 and 7: Actual Innocence/Insufficient Evidence

Petitioner argues that there was insufficient evidence to convict him of second degree murder. He also argues that he has proven his actual innocence because his second degree murder conviction was based on the specific intent to commit armed robbery, but the State never proved that armed robbery was committed. [doc. #1-1, p. 10].

To the extent Lewis asserts a stand-alone actual-innocence claim, that claim is not independently cognizable under federal habeas review. *See Foster v. Quarterman*, 466 F.3d 359, 367 (5th Cir. 2006). Even if Lewis' claim was cognizable, he has not shown that he is actually innocent. The Supreme Court has held that to show actual innocence, a petitioner must establish:

> that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt . . . in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after trial.

*Schlup v. Delo*, 513 U.S. 298, 321 (1995). As discussed in the following paragraphs, there was ample evidence for a jury to find Petitioner guilty of second degree murder and the attempted perpetration of armed robbery, simple robbery, or aggravated burglary. Petitioner has provided no new evidence which exonerates him.

When a *habeas* petitioner asserts that the evidence presented to the court was insufficient to support his conviction, the limited question is whether the state court's decision to reject that

claim was an objectively unreasonable application of the clearly established federal law as set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Williams v. Puckett*, 283 F.3d 272, 278-79 (5th Cir. 2002). A conviction is based on sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The *Jackson* inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Thus, a conviction may rest on sufficient evidence "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

In Louisiana, second degree murder is defined as the killing of a human being:

(1) When the offender has a specific intent to kill or to inflict great bodily harm; or

(2)(a) When the offender is engaged in the perpetration or attempted perpetration of . . . aggravated burglary, . . . armed robbery, . . . [or] simple robbery . . . even though he has no intent to kill or to inflict great bodily harm.

*Id.* § 14:30.1(A)(1)-(2)(a).

Here, the Louisiana appellate court invoked and applied the *Jackson* standard, and it did not do so unreasonably. *See Lewis*, 110 So.3d at 649-50. The appellate court set forth the testimony and evidence presented at trial as follows:

At trial, the State presented the eyewitness testimony of Wesley and her two sons, D'Schwadraa and D'Artre-yus, who all testified as to the same basic sequence of events that occurred on the night of the crime. At approximately 1:00 a.m., when Wesley returned home from work, three suspects followed her inside. She screamed and ran into her older son's bedroom, where Defendant got on top of her on the bed and demanded money. She took Defendant to the bedroom where Edwards was sleeping and a scuffle between Edwards and Defendant followed. Defendant fired

multiple gunshots, striking Edwards. Thereafter, the men searched the dresser drawers and fled. Wesley and D'Schwadraa identified Defendant in a photographic lineup and at trial.

The evidence presented at trial established that Defendant's DNA was found at the crime scene in the bedroom where Edwards was shot. A latex glove finger and a black skull cap were found on a bloodstained area of the bedroom floor, between the bed and the wall, in the area where the victim's body was located. Defendant's DNA was found on the inside of the latex glove finger. The witnesses' testimony established that the perpetrator was wearing gloves. Further, the black skull cap contained the DNA of Defendant and the blood of Edwards.

In addition, the evidence connected Defendant to the revolver that killed Edwards. The revolver found at the scene of Shannon Golston's homicide, when tested, created markings that matched the two bullets that ultimately killed Edwards. At the Golston crime scene, Det. Rudell, the same SPD detective investigating the Edwards murder, found photographs that showed Golston and Defendant together, and Defendant told Det. Rudell that Golston was "his boy" and that he "loved him to death," establishing their close friendship. Moreover, Det. Rudell's description of Golston as a short, stocky, muscularly built black man matches the witnesses' description of the second perpetrator.

*Id.* Applying the *Jackson* standard, the appellate court held that the aforementioned evidence was

sufficient to support Petitioner's second degree murder conviction. *Id.* The court reasoned,

The State presented sufficient evidence for the jury to reasonably find that Defendant had the specific intent to kill or inflict great bodily harm. Edwards died from two gunshot wounds  to his back, fired from a very close range. Edwards' body was pressed against something, presumably the floor or the bed, when he was shot. The revolver had a double action pull of 12 1/5 pounds, which is somewhat difficult to pull. Wesley testified that, after she heard the first gunshot, she went to the bathroom doorway and saw Defendant stand over Edwards and shoot two more times. Also, Wesley testified that Defendant had a gun and threatened to kill them if they did not give him the money.

Further, the State presented sufficient evidence for the jury to reasonably find that Defendant was engaged in the perpetration or the attempted perpetration of an aggravated burglary, armed robbery, or simple robbery. Defendant was armed with a gun when he made an unauthorized entry into an inhabited dwelling, Wesley's home. Wesley, D'Schwadraa and D'Artre-yus testified that the men repeatedly asked where the money was located and that they rummaged through the dresser drawers. This evidences Defendant's intent to commit a theft. Also, there was testimony presented that Wesley's cell phone and Edwards' wallet were missing from the house

12

after the incident, even though none of the witnesses saw the men leave the house with anything.

However, even if the jury could not conclude that a completed aggravated burglary or armed robbery had occurred, the evidence was sufficient to support a finding that he attempted either of these crimes.

Therefore, the evidence presented was sufficient to support Defendant's conviction for second degree murder, either by the specific intent to kill or inflict great bodily harm, or by the attempted perpetration of an aggravated burglary or an armed robbery.

*Id.*

Petitioner argues that the State failed to prove that anything of value was taken from the crime scene to support a conviction for armed robbery. However, as the state appellate court pointed out, the evidence was sufficient to support a finding that Lewis attempted either burglary or robbery. *See Lewis*, 110 So.3d at 650. Petitioner also argues that the State failed to provide evidence that Petitioner was actually at the crime scene. But two eye witnesses identified Petitioner in a photographic lineup, his DNA was found at the crime scene in the bedroom where the victim was shot, and the evidence connected Petitioner to the weapon. Petitioner only provides conclusory, unsupported arguments that the DNA testing methods used were unreliable.

In sum, the undersigned cannot say that the state court's application of *Jackson* was objectively unreasonable. Petitioner's claims for relief based on insufficient evidence and actual innocence should be **DENIED**.

<u>Claims 2 and 11: The Trial Court Erred When it Allowed the State to Present an Unqualified Expert Witness and When it Allowed DNA Evidence Without Determining That it Met the Appropriate Standard of Scientific Reliability</u>

Petitioner argues that the trial court erred under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 570 (1993), in admitting an unqualified State expert. [doc. #1-1,

p. 16]. Petitioner states that the expert, Ms. Hernandez, "never completed a Certification Program in her field of experti[s]e of DNA analysis." *Id.* at 17. He further argues that the trial court erred when it allowed the DNA evidence to be admitted without determining that it met the appropriate standard of scientific reliability under *Daubert.*

First, the Fifth Circuit has rejected habeas claims based on *Daubert* with the explanation that such claims are "squarely foreclosed by Supreme Court and circuit precedent." *Rivas v. Thaler*, 432 F. App'x 395, 404 (5th Cir.), *cert. denied*, 565 U.S. 1096 (2011). Second, federal habeas courts "do[] not sit to review the mere admissibility of evidence under state law." *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998). A state trial court's evidentiary rulings will mandate habeas relief only "when errors are so extreme that they constitute a denial of fundamental fairness." *Id.* (citing *Evans v. Thigpen*, 809 F.2d 239, 242 (5th Cir. 1987)). Thus, the standard of review of this claim "is not whether the testimony satisfied the *Daubert* test, which does not set forth a constitutional rule on the admissibility of scientific evidence, but rather whether the wrongful admission of evidence rendered the trial fundamentally unfair." *Schmidt v. Huburt*, No. 05-2168, 2008 WL 4491467, *14 (W.D. La. Oct. 6, 2008).  Lewis' claims fall far short of this standard.

The forensic expert in this case, Ms. Hernandez, is a forensic scientist at the North Louisiana Criminalistics Laboratory. [doc. #14-6, pp. 133-134]. DNA analysis has been her field of expertise since 2005, and she has worked on hundreds of cases. *Id.* at 136. While Ms. Hernandez did not go through an "optional" certification program, which forms the basis of Lewis' complaint, she is qualified to be a forensic DNA analyst under the standards set forth by the Federal Bureau of Investigation. *Id.* at 140. Her testimony did not render Lewis' trial

14

fundamentally unfair merely because she did not complete an optional training program.

Furthermore, Lewis has presented no evidence whatsoever that the "methodology" used to analyze DNA in this case was unreliable, and his arguments are entirely conclusory. Therefore, Lewis has failed to show that the state's evidentiary rulings in this regard constituted a denial of fundamental fairness.

Claims two and eleven should be **DENIED**.[3]

Claims 3 and 4: Petitioner's DNA Was Illegally Taken and He Was Arrested Without Probable Cause

Lewis argues that saliva samples were taken from him in violation of the Fourth Amendment. The warrant for his DNA stated: "The affiant now seeks a search warrant to allow him to have a trained technician take saliva samples of Dion Lewis so an expert in DNA can compare said samples to the evidence recovered from the crime scene." [doc. #1-1, pp. 19-20]. Lewis claims that Detective Greg Rudell impermissibly took saliva samples from Lewis even though Detective Rudell was not a trained technician as required by the warrant. *Id.* at 20. He also asserts that the State never established chain of custody, and that contamination of his DNA was "very probable." *Id.* at 21. Lewis further argues that he was arrested without probable cause in violation of the Fourth amendment.

Review of Lewis' fourth amendment claims are barred. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465,

---

[3] To the extent Lewis makes an ineffective assistance of counsel claim based on counsel's failure to object to Hernandez as a witness, that argument is addressed *infra* under claim six.

494 (1976). Federal habeas review is barred whether or not the defendant avails himself of the available processes, *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002), and even if the state court rulings regarding the Fourth Amendment claims were erroneous, *Swicegood v. Alabama*, 577 F.2d 1322, 1324 (5th Cir. 1978). Louisiana provides the opportunity for full and fair litigation of Fourth Amendment violations through motion to suppress proceedings. *See Davis v. Blackburn*, 803 F.2d 807, 807 (5th Cir. 1986); *Thomas v. Warden, La. State Penitentiary*, No. 11-2119, 2015 WL 1508432, *5 (W.D. La. Mar. 30, 2015) (noting that Louisiana provides a procedural mechanism to litigate Fourth Amendment illegal search and arrest claims). While Lewis did not file a motion to suppress the DNA evidence or his arrest warrant, his claims are nonetheless barred. *See Joshua v. Maggio*, 674 F.2d 376, 377 (5th Cir. 1983) (appellants' full litigation of their fourth amendment claim that their arrest was not supported by probable cause precluded federal habeas relief); *Brown v. Cain*, No. 06-0336, 2007 WL 2478762, *3-*5 (W.D. La. Aug. 29, 2007) (same).

Additionally, Lewis' chain of custody claim is not cognizable on federal habeas review. *See Parker v. Cain*, 445 F.Supp.2d 685, 706 (E.D. La. 2006) ("Challenges to the admissibility of evidence based on an improper chain of custody involve matters of state evidential law, and defects in the chain of custody alone normally do not rise to the level of a constitutional deprivation."). As previously noted in this report and recommendation, federal habeas relief is warranted only when evidentiary errors are so extreme that they constitute a denial of fundamental fairness. *Little*, 162 F.3d at 862. Lewis' arguments concerning "possible contamination" of the DNA are entirely conclusory, speculative, and without merit. He therefore fails to show that he was denied fundamental fairness.

Claims three and four should be **DENIED**.

Claim 5: Denied His Right to be Informed of the Charges Against Him

Lewis contends that his grand jury indictment was defective. Specifically, he argues that he was not informed of the "cause" of the accusations against him. [doc. #1-1, p. 26]. He also asserts that his indictment did not list any of the "essential elements, circumstances/causes of how the crime was committed". *Id.*

Review of this claim on federal habeas is precluded. The Sixth Amendment mandates that " . . . the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ." U.S. CONST. amend VI. However, "[t]he sufficiency of a state indictment is not a matter for federal habeas relief unless it can be shown that the indictment is so defective that it deprives the state court of jurisdiction." *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir.), *cert. denied*, 513 U.S. 854 (1994). "Where the state courts have held that an indictment is sufficient under state law, a federal court need not address that issue." *Id.* A "federal habeas court will not consider such claims '[w]hen it appears . . . that the sufficiency of the indictment was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case. . . .'" *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985) (quoting *Murphy v. Beto*, 416 F.2d 98, 100 (5th Cir. 1969)).

In the instant case, Lewis does not allege that the state court lacked jurisdiction over him. Moreover, when presented with the question of whether the indictment violated Lewis' constitutional rights, the Louisiana Supreme Court denied Lewis' claim. [doc. #12-9, p. 205]. Review of this claim is thus foreclosed. *See Gross v. Cain*, No. 09-3353, 2010 WL 1552739, *14 (E.D. La. Mar. 11, 2010) (prohibiting federal review of defective indictment claim where

Louisiana Supreme Court denied the claim in petitioner's post-conviction writ application).

Claim five should be **DENIED**.

Claim 8: Trial Court Erred in Denying's Petitioner's Motion to Suppress Identification Testimony

Lewis asserts that the trial court erred in denying defense counsel's motion to suppress the identification testimony of two eye witnesses. He argues that the photographic lineup that was presented to the two witnesses was unduly suggestive. [doc. #1-1, pp. 43-44].

"Pretrial identification procedures are constitutional unless 'the pretrial identification was so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law.'" *Peters v. Whitley*, 942 F.2d 937, 939 (5th Cir. 1991) (quoting *Lavernia v. Lynaugh*, 845 F.2d 493, 499 (5th Cir. 1988)). Courts consider first "whether the identification procedure was impermissibly suggestive, and if so," under the totality of the circumstances, "whether there was a substantial likelihood of misidentification." *Id.*

Courts consider five factors to determine whether a witness's identification was reliable: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of his prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

The Second Circuit Court of Appeal denied this claim on the merits, finding that the photographic lineup was neither unduly suggestive nor "tainted by the likelihood of misidentification." *Lewis*, 110 So.3d at 652. The appellate court listed and analyzed the five *Manson* factors. *Id.* at 651. Specifically, the state court found,

The photographic lineup was generated using a computer system, which eliminates

the possibility of tampering or making the lineup unduly suggestive. It was shown to the witnesses separately and neither Wesley nor her son was shown a picture of Defendant prior to the photographic lineup.

***

The photographic lineup used in this case was not unduly suggestive. The only distinguishing feature of Defendant in the lineup is that his photograph was taken from a farther distance than the others and he is wearing a white t-shirt. However, a review of the photographic lineup does not show that this focuses attention upon Defendant so as to make the lineup unduly suggestive. All of the men contained in the lineup are of similar height, weight and age and have similar facial hair and facial features. All of the photographs have a similar background and all of the men are wearing various forms of casual street clothing. Neither of the witnesses had seen a photograph of Defendant prior to viewing the lineup. There is nothing in the record to indicate that, in making their identification, the witnesses focused on the clothing worn by Defendant, rather than his overall physical appearance. The photographic lineup, therefore, does not unduly focus attention on Defendant.

In addition, the record does not indicate that the use of this photographic lineup was tainted by the likelihood of misidentification. At the time of the crime, the house was dark and the only light came from a stove light in the kitchen and TVs in the bedrooms. Defendant was wearing a bandana that covered the bottom half of his face. The witnesses, however, were able to view Defendant, specifically his eyes, while they were in close proximity to him. Wesley was able to view Defendant when he was face-to-face with her on top of her bed, and D'Schwadraa was able to view Defendant when Defendant stood over him in the hallway. During the crime, the witnesses appear to have been paying attention to what the men were doing, as shown by the fact that D'Schwadraa kept coming out of his room to see what was happening. Although some of their descriptions of the perpetrators were inaccurate, such as the number of men and the fact that Defendant's arms are covered in tattoos, their general descriptions of the men were accurate and consistent. Further, while there was conflicting testimony about the manner in which the witnesses viewed the lineup, Wesley and D'Schwadraa were positive in their identifications of Defendant when they viewed the lineup, two months after the crime, and at trial. Considering the totality of these circumstances, there was no substantial likelihood of misidentification. Therefore, the photographic lineup used in this case was not suggestive and the identifications made by the witnesses were sufficiently reliable. This assignment of error, therefore, is without merit.

*Id.* at 651-52.

Considering the *Manson* factors, the undersigned finds that the state appellate court's

ruling was not contrary to, or an unreasonable application of, federal law, nor was it an unreasonable determination of the facts in light of the evidence presented. As stated by the appellate court, all of the men contained in the lineup were of similar height, weight and age and had similar facial hair and features. *See Peters*, 942 F.3d at 940 (lineup not suggestive where the six photographs were of men "with the same general appearance" as defendant). Both witnesses were able to view Petitioner while they were in close proximity with him at the time of the crime. Ms. Wesley testified that "his face [was] in my face," and that the Petitioner "got on top of me" and "got down in my face". [doc. #14-5, p. 139]; *Compare Swicegood*, 577 F.2d at 1328 (first factor indicated suggestiveness where one victim "had only a fleeting opportunity" to view the suspect, and the other victim "had no chance whatsoever."). Moreover, the witnesses' "general descriptions" of the suspects "were accurate and consistent." And the witnesses were positive in their identifications of Lewis when they viewed the lineup separately. *Compare id.* at 1329 (fourth factor indicated suggestiveness where neither of the victims could make a positive identification and each selected a different individual).

The only factor that *may* weigh in favor of suggestiveness is the fifth *Manson* factor. Detective Rudell testified that he was "not exactly sure" when he showed the lineup, but guessed that it was within "a week or two" of the crime. [doc. #14-5, p. 77]. Ms. Wesley, on the other hand, testified that she was showed the lineup two months after the incident. *Id.* at 179. The "passage of weeks or months between the crime and the viewing of the photograph" weighs in favor of suggestiveness. *Manson*, 432 U.S. at 115.

However, even if the Court credits Ms. Wesley's testimony, Lewis' claim still fails because there was not a substantial likelihood of misidentification under the totality of the

circumstances. In *Neil v. Biggers*, the Supreme Court held that, even though the station house lineup may have been suggestive, and notwithstanding the lapse of seven months between the crime and the confrontation, there was no substantial likelihood of misidentification where the victim spent up to a half an hour with the defendant, she twice faced the defendant directly and intimately, she made a positive identification and provided a thorough physical description of the defendant. *Neil v. Biggers*, 409 U.S. 188, 200-01 (1972). So to here, the potential lapse of two months between the crime and the confrontation does not overcome the evidence that supports the reliability of the witnesses' identifications.

Claim eight should be **DENIED**.

Claim 10: Trial Court Erred in Allowing Hearsay Testimony

Lewis argues that his confrontation rights were violated when the trial court admitted prejudicial hearsay testimony at trial. On direct-examination, the prosecution elicited testimony from Ms. Wesley regarding names of suspects given to her by Waco Collins. Collins did not testify at trial. Ms. Wesley then gave those names to investigating detectives. When Ms. Wesley was asked at trial what names from Collins she provided to detectives, defense counsel objected on hearsay grounds. [doc. #14-5, pp. 154-56]. His objection was overruled. Ms. Wesley then testified that after her phone conversation with Collins, she passed on Lewis' name as a potential suspect to detectives. *Id.*

On appeal, the Second Circuit Court of Appeal held that "Wesley's testimony regarding the names of potential suspects that she received from Waco Collins and then related to Det. Rudell is inadmissible hearsay." *Lewis*, 110 So.3d at 654. "The statements represented the initial connection of Defendant to this case, and Mr. Collins did not testify at trial." *Id.* Nonetheless, the

appellate court held that "[c]onsidering the totality of the evidence presented and the fact that the names given to Wesley were admitted in other lines of questioning, the admission of the hearsay statements was harmless error." *Id.*

The state appellate court did not resolve whether the trial court committed constitutional error; it merely concluded that any error was harmless. *See Taylor v. Cain*, 545 F.3d 327, 335 (5th Cir. 2008) ("Even though the Louisiana Court of Appeal only answered the harmless error question, this court must first consider whether the admission of [hearsay] testimony was an 'unreasonable application' of federal law.").[4] Under the Sixth Amendment, a criminal defendant has the right "to be confronted with the witnesses against him." *Coy v. Iowa*, 487 U.S. 1012, 1015 (1988). "The Confrontation Clause generally bars witnesses from reporting the out-of-court statements of nontestifying declarants." *Taylor*, 545 F.3d at 335 (citing *Crawford v. Washington*, 541 U.S. 36, 54-56 (2004)). The only exception is when the declarant's statement falls into a "firmly rooted hearsay exception" or when there was a showing that the statement bore "particularized guarantees of trustworthiness." *Ohio v. Roberts*, 448 U.S. 56, 66 (1980).

Ms. Wesley unquestionably testified about highly incriminating information from Collins. The following colloquy took place during Ms. Wesley's direct examination at trial:

Q: Now, you indicated approximately a month later after this crime occurred is when you spoke to Waco Collins?

A: Yes.

Q: And did he call you or did you call him?

A: He called me.

---

[4] "AEDPA deference is due to state court decisions, even when the state court does not explicitly address the relevant issue." *Taylor*, 545 F.3d at 335.

> Q: Do you recall about what time in the morning this phone call took place?
>
> A: About 3:00 o'clock that morning.
>
> Q: And after that phone conversation did you pass any information to Detective Rudell?
>
> A: Yes

[doc. #14-5, p. 154]. Defense counsel objected on hearsay grounds. The prosecutor stated that it would not "go into any actual discussion she had with Mr. Collins, just the information she passed to the detectives." *Id.* at 155. The Court then overruled defense counsel's objection and the examination continued:

> Q: Ms. Wesley, during the month of September did you pass information to the detectives about potential suspects in this case?
>
> A: Yes
>
> Q: And what information did you pass to the detective? Not what somebody told you, what information you passed?
>
> A: I passed on some names that I had that was given to me.
>
> Q: And what names did you pass to the detectives?

*Id.*  Defense counsel again objected on hearsay grounds, but his objection was overruled. Ms Wesley then stated, "I told them that Dion Lewis, which was Slim." *Id.* at 156. This testimony represented the initial connection of Lewis to this case by law enforcement. There was no hearsay exception, and Lewis was denied his right to confrontation because Collins did not testify. *See Taylor*, 545 F.3d at 336 (officer's testimony indicating that a nontestifying witness identified the defendant as the perpetrator was hearsay). "Under *Ohio v. Roberts*, the admission of such hearsay statements against a criminal defendant violates the Confrontation Clause". *Id.* Thus, the admission of this testimony against Lewis was a violation of clearly established

Supreme Court precedent. *See id.*

However, if the state court's constitutional error was harmless, the error is not a basis for relief. The Louisiana appellate court has already found that the error was harmless. This Court must decide whether, in reaching that conclusion, the state court applied harmless error analysis in an "objectively unreasonable" manner. *See id.* The test for harmless error in a federal habeas action is "whether the error had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

In *Taylor v. Cain*, the Fifth Circuit held that the Louisiana appellate court applied harmless error analysis in an objectively unreasonable manner where there was no physical evidence linking the defendant to the crime, only one eye witness identified the defendant at the crime scene and his identification was "less-than-certain," the hearsay testimony was uncorroborated, and the defendant had several alibi witnesses. 545 F.3d. at 336-37.

The case at hand is distinguishable from *Taylor*, and there was sufficient evidence for the jury to convict Petitioner of second degree murder absent Wesley's testimony. Unlike in *Taylor*, two eyewitnesses affirmatively identified Lewis in a photographic lineup and physical evidence linked Lewis to the crime—namely, Lewis' DNA was found on the inside of a latex glove finger and a black skull cap found at the scene of the crime. Witness testimony established that the perpetrator was wearing gloves. Additionally, Lewis was connected to the gun that killed the victim. The gun was found at an unrelated murder scene of an individual named Shannon Golston. Lewis and Golston were very close friends, and Golston was believed to be the second perpetrator at the instant crime scene. As the appellate court noted, Ms. Wesley and her two sons corroborated each other's stories, testifying to the same basic sequence of events that occurred

on the night of the crime. Therefore, the state court did not apply harmless error analysis in an objectively unreasonable manner.

Claim ten should be **DENIED.**

Claim 6: Ineffective Assistance of Counsel

Lewis argues this his trial counsel provided ineffective assistance in four ways: (1) for failing to object to the testimony of an uncertified expert; (2) for failing to request expert funding for further DNA testing; (3) for failing to challenge the illegal search and seizure of Petitioner; and (4) for failing to investigate alibi witnesses. [doc. #1-1, p. 28].

"To assert a successful ineffectiveness claim, petitioner is required to establish both (1) constitutionally deficient performance by his counsel and (2) actual prejudice as a result of his counsel's deficient performance." *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998). "The failure to prove either deficient performance or actual prejudice forecloses an ineffective assistance claim." *Id.* In order to satisfy the first prong, Rochelle must prove that his counsel's performance "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). In applying the first prong, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *See id.* at 689-90. The second prong is satisfied if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The prongs

of the test also need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997). Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green*, 160 F.3d at 1042-43.

First, Lewis argues that his trial counsel failed to object to the State's expert witness testimony where the expert failed to complete a certification program. As described *supra* in claim two, the fact that the State's expert failed to complete an *optional* training program did not render her testimony unreliable. Therefore, lodging an objection to her testimony on this basis would have been fruitless, and trial counsel's actions in this regard were not deficient. *See Tyler v. Cain*, No. 15-0824, 2016 WL 4059212, *11 (W.D. La. June 17, 2016) (citing *United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) ("Failure to file a frivolous motion or lodge a futile objection does not cause counsel's performance to fall below an objective level of reasonableness."). To the extent Lewis re-urges his arguments based on *Daubert*, this report and recommendation has already held that such claims are foreclosed. *See Rivas*, 432 F. App'x at 404.

Second, Lewis argues that his trial counsel failed to request secondary testing of the DNA evidence or funding for a rebuttal expert. In general, "complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002). Thus, the Court cannot conclude that counsel's failure to call an expert witness to conduct "secondary testing" on the DNA evidence was ineffective assistance. *See id.* Moreover, for Lewis to demonstrate the requisite prejudice, he must show not only that the testimony would have been

favorable, but also that the witness would have testified at trial. *Alexander*, 775 F.2d at 602. Lewis has not done this. Lewis attempts to argue that separate testing "could" have shown the jury that Petitioner's DNA was only on the latex glove as a result of "DNA transfer," but this claim is unsupported, conclusory, and speculative. [doc. #1-1, p. 31]; *See Evans*, 285 F.3d at 377 (reversing district court's conclusion that counsel was ineffective for failing to call a scientific expert to testify, and for failing to order scientific testing on petitioner's bloody shirt because Petitioner's arguments were speculative).[5] Therefore, Lewis fails to show that his counsel's actions were deficient in this regard or that he suffered prejudice.

Third, Lewis argues that counsel failed to object to the illegal search and seizure of Petitioner's DNA by someone other than a trained technician and without counsel present. Notwithstanding the language in the warrant to have a "trained technician" take Lewis' DNA, Louisiana law allows peace officers to obtain DNA pursuant to a valid search warrant. *See* La. C. Cr. P. art. 163.1(A)-(B) (a search warrant for DNA "may be executed any place the person is found and shall be directed to any peace officer who shall obtain and distribute the bodily samples as directed in the warrant."). Thus, it was permissible for Detective Rudell to obtain buccal swabs from Lewis, and any objection to the seizure of Lewis' DNA on this basis would have been fruitless. Furthermore, there is no federal requirement that a "trained technician" take

---

[5] Lewis also seems to argue that secondary DNA testing would have shown that the DNA belonged to another individual named Waco Collins. This claim is unfounded. The State's expert developed DNA profiles from saliva swabs obtained from Collins, in addition to Lewis. [doc. #14-6, p. 145]. Collins was **excluded** as a possible contributor to the DNA found on the hat, while Lewis could **not** be excluded. *Id.* at 152. Additionally, Lewis could **not** be excluded as a major contributor to the DNA found on the latex glove, and the minor contributor of the DNA found on the glove could not be identified because the amount of DNA found was too low to be developed. *Id.* at 158. Thus, even had counsel requested further testing, it would not have shown that the DNA on either item belonged to Collins.

DNA swabs, and the record does not suggest that Lewis' DNA sample was taken in an unreasonable manner. Therefore, trial counsel's actions were not deficient in this regard.

Lastly, Lewis argues that defense counsel failed to investigate alibi witnesses Monique Henderson and Carlos Johnson who could have accounted for Lewis' whereabouts at the time of the murder. Lewis claims he was at his sister and brother-in-law's home at the time of the crime, and that counsel was made aware of Henderson's and Johnson's willingness to testify, but that he "denied them the ability to testify". [doc. #1-1, pp. 33-34].

To reiterate, "complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." *Evans*, 285 F.3d at 377. Petitioners may demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense. *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010). "Where the only evidence of a missing witnesses' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986). Petitioner must overcome a strong presumption that his counsel's decision in not calling a witness was a strategic one. *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984).

Other than Lewis' self-serving statements, he has not provided any evidence that the alleged alibi witnesses were available to testify and that they would have done so. *See Woodfox*, 609 F.3d at 808. Lewis does not provide affidavits from Henderson or Johnson that summarize the content of their testimony or show that they would have been available to testify. *See Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (expert witness's affidavit failed to state he was

available to testify, that he would have done so, or what he would have testified to); *Vasquez v. Thaler*, 505 F. App'x 319, 327 (5th Cir. 2013) (holding that Petitioner failed to show witnesses' availability when the witnesses neither testified at the state habeas proceeding nor submitted affidavits). Nonetheless, even assuming that it was error for trial counsel not to call the alleged alibi witnesses, Lewis cannot show that the jury's conclusion would have been any different. Lewis was positively identified by two eyewitnesses as the perpetrator and his DNA was found at the crime scene. As described more fully *supra* in claim one, the jury had enough evidence to convict Lewis. *See id.* at 539 (no prejudice for failing to call expert witness because jury heard "ample evidence" to convict defendant).

Petitioner's claim for relief based on ineffective assistance of counsel should be **DENIED.**

## Conclusion

For the reasons stated above, **IT IS RECOMMENDED** that the Petition for *habeas corpus* filed by Petitioner Deion Lewis, [doc. # 1], be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.**  *See* 28 U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In Chambers, Monroe, Louisiana, this 5th day of May, 2017.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE